UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN D. PATTERSON, *et al.*, ) | CASE NO. 5:08CV1300 |
| ) | |
| Plaintiffs, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| CITY OF AKRON, OHIO, *et al.*, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendants. ) | |
| ) | |

This matter is before the Court with the consent of all parties on the sole issue of the enforceability of the release/waiver (the "Release-Dismissal Agreement") entered into by Plaintiff Brian D. Patterson ("Plaintiff"), with all other issues remaining for subsequent resolution by the District Court Judge.[1] ECF Dkt. #205, #206, #207.  The undersigned conducted a bench trial beginning on July 18, 2016 and concluding on July 19, 2016.  ECF Dkt. #215, #217.  At the close of the bench trial on July 19, 2016, Plaintiff's counsel moved to admit a statement written by Plaintiff into evidence, however, Plaintiff's counsel did not have a copy of

---

[1]On June 17, 2016, the Court held:

> For the reasons set forth above, defendants' motion for summary judgment (ECF Dkt. #159) is granted in part and denied in part.
>
> In light of these rulings, the following remains for trial: (1) Derek's excessive force claim against defendants' Bickett and Didyk; (2) whether Brian's Release-Dismissal Agreement is enforceable and, if not; (3) Brian's excessive force claim against Evans.

ECF Dkt. #198.  This matter is before the undersigned to rule on the "sole issue of the enforceability of the release/waiver signed by plaintiff Brian D. Patterson, and to enter a judgment on that sole issue, with all other issues remaining for subsequent resolution by the assigned district court judge."  ECF Dkt. #206.  The undersigned recognizes that the Plaintiff's excessive force claim currently only extends to Defendant Kevin Evans, however, the finding on whether the Release-Dismissal Agreement is enforceable applies equally to all named defendants as the terms of the Release-Dismissal Agreement dictated that Plaintiff agreed not to institute a lawsuit against any of the police officers involved in his arrest or the City of Akron.  *See* ECF Dkt. #224 at 7.

the statement at the time, instead indicating that the statement could be filed following the conclusion of the bench trial. ECF Dkt. #217 at 56-59. Defendants objected to the entry of Plaintiff's statement into evidence.[2] *Id.* at 58-59. The undersigned indicated that Plaintiff may file the statement and that the Court would then determine the admissibility of the statement. *Id.* at 58. Following the conclusion of the bench trial, the parties submitted proposed findings of fact and conclusions of law. ECF Dkt. #221, #223. The Court will first address the admissibility of Plaintiff's statement into evidence and then present the findings of fact and conclusions of law.

## I. ADMISSIBILITY OF PLAINTIFF'S WRITTEN STATEMENT

On July 21, 2016, Plaintiff filed Proposed Exhibit 1. ECF Dkt. #219. Proposed Exhibit 1 is a Summit County Adult Probation Department Social History form, which appears to have been completed by Plaintiff, outlining Plaintiff's version of his arrest and his belief that he did not commit a crime. ECF Dkt. #219. Proposed Exhibit 1 is not signed or dated. *Id.* Defendants filed an objection to Plaintiff's Proposed Exhibit 1 on July 26, 2016, asserting that Proposed Exhibit 1 is irrelevant and that it constitutes inadmissible hearsay. ECF Dkt. #220. Defendants are correct on both grounds.

This matter is before the Court on the sole issue of the enforceability of the Release-Dismissal Agreement entered into by Plaintiff. Proposed Exhibit 1 contains no information regarding the Release-Dismissal Agreement, instead providing only Plaintiff's personal information, a description of Plaintiff's version of his arrest, and Plaintiff's comments that he did not commit the offense and that he was the victim of an assault. ECF Dkt. #219. The three factors this Court must consider when determining whether the Release-Dismissal Agreement is enforceable are: (1) voluntariness; (2) prosecutorial misconduct/overreaching; and (3) public

---

[2]As discussed above at n. 1, this ruling is applicable to the question of whether the Release-Dismissal Agreement is enforceable as to all named defendants, not Defendant Evans alone. Although practically the issue of whether the Release-Dismissal Agreement is enforceable is only currently at issue insofar as it applies to Defendant Evans, as Plaintiff's allegations of excessive force are directed against him, the Court will use the term "Defendants" throughout this Memorandum Opinion and Order to accurately reflect the status of the enforceability of the Release-Dismissal Agreement.

interest. *Town of Newton v. Rumery*, 480 U.S. 386 (1987).  None of the information contained in Proposed Exhibit 1 relates to any of the factors prescribed in *Rumery* or the enforceability of the Release-Dismissal Agreement.  The Court is considering the sole issue of the enforceability of the Release-Dismissal Agreement, and Proposed Exhibit 1 contains no information directly relating to the Release-Dismissal Agreement.  As such, Proposed Exhibit 1 is not relevant to the limited legal issue before the Court.

Additionally, Proposed Exhibit 1 is inadmissible hearsay.  "The party arguing for admission bears the burden of establishing the proper foundation for the admissibility of the statements."  *Liadis v. Sears, Roebuck and Co.,* 47 Fed. App'x 295, 303 (6th Cir. 2002).  No foundational support has been established for the statements contained in Proposed Exhibit 1.  During the bench trial, Plaintiff was present and available to provide testimony establishing foundational support for the statements contained in Proposed Exhibit 1, yet Plaintiff made no such statements.  Accordingly, Defendants were denied the opportunity to cross-examine Plaintiff regarding the statements contained in Proposed Exhibit 1, and thus these statements are unverified and constitute inadmissible hearsay.

For the above reasons, Proposed Exhibit 1 is inadmissible as irrelevant to the limited legal issue before this Court and constitutes inadmissible hearsay.

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court conducted a bench trial beginning on July 18, 2016 and concluding on July 19, 2016.  At trial, Defendants called Judge Patricia A. Cosgrove, Greta Johnson, Thomas Bown, and Plaintiff to testify.  ECF Dkt. #215, #217.  Plaintiff also testified on his own behalf.  ECF Dkt. #217.  After considering the exhibits entered into evidence and the testimony provided at the bench trial, the Court issues the following findings of fact and conclusions of law:

### A.     Findings of Fact

1.  This matter is before the undersigned with the consent of the parties on the sole issue of the enforceability of the Release-Dismissal Agreement entered into by Plaintiff in Summit County, Ohio Court of Common Pleas Case No. CR 2006-05-1970 on January 16, 2007.  ECF Dkt. #205, #206, #207.

2. On June 8, 2006, a Summit County, Ohio Grand Jury indicted Plaintiff for one count of Assault in violation of Ohio Revised Code ("R.C.") § 2903.13(A) (a fourth-degree felony) and one count of Resisting Arrest in violation of R.C. § 2921.33(B) (a first-degree misdemeanor).  ECF Dkt. #224 at 11.

3. Summit County Assistant Prosecutor Greta Johnson was one of the prosecutors assigned to the courtroom of Judge Cosgrove of the Summit County, Ohio Court of Common Pleas in and around 2006, and Prosecutor Johnson was assigned Plaintiff's criminal case.  ECF Dkt. #215 at 13, 33.

4. Prosecutor Johnson had no direct involvement in Plaintiff's June 8, 2006 indictment.  ECF Dkt. #215 at 43-44.

5. After reviewing the incident report and report of investigation relating to Plaintiff's arrest, Prosecutor Johnson communicated with Plaintiff's defense counsel and a supervising sergeant with the Akron Police Department prior to the first criminal pretrial conference.  ECF Dkt. #215 at 35-38.

6. Plaintiff's criminal trial was set for January 18, 2007.  ECF Dkt. #224 at 21.

7. Regarding discussions with Plaintiff's defense counsel, Prosecutor Johnson communicated primarily with Attorney Christopher Congeni.  ECF Dkt. #215 at 40, 47-48, 50.  Prosecutor Johnson communicated with Attorney Congeni frequently regarding Plaintiff's criminal case.  *Id.* at 56.

8. It was Prosecutor Johnson's objective to ensure that the police officers involved in this case felt that their interests were represented and she assessed the risk of prosecuting a case arising from an alleged assault on a police officer. ECF Dkt. #215 at 45. Prosecutor Johnson determined that any plea agreement resolving the case would include a release of liability provision, which was her standard practice in cases involving the use of force by a police officer. *Id.* at 57-58.

9. Plaintiff did not want to have a felony conviction on his record because of the stigma of being convicted of a felony, as well as the impact that a felony conviction has on an individual's ability to find employment and exercise his or her rights, such as voting and gun ownership. ECF Dkt. #217 at 15-16.

10. The weekend prior to Plaintiff's criminal trial, Plaintiff had a discussion with Attorney Congeni and Attorney Matthew L. Rizzi regarding the Release-Dismissal Agreement. ECF Dkt. #217 at 24. Attorney Congeni and Attorney Rizzi explained the Release-Dismissal Agreement to Plaintiff, and Plaintiff understood the nature of the Release-Dismissal Agreement. *Id.*

11. On January 16, 2007, Plaintiff appeared before Judge Cosgrove and indicated that he wished to enter a plea of no contest to the single count of Resisting Arrest contained in the indictment and the State dismissed the single count of Assault contained in the indictment as per the terms of the Release-Dismissal Agreement. ECF Dkt. #224 at 2-3.

12. On January 16, 2007, Prosecutor Johnson was unavailable to appear in court and Assistant Prosecutor Thomas Bown presented and conducted Plaintiff's plea. ECF Dkt. #215 at 68.

13. Plaintiff was represented by Attorney Rizzi on January 16, 2007 at the time he entered he plea of no contest to the single count of Resisting Arrest. ECF Dkt. #224 at 2.

14. The terms of the Release-Dismissal Agreement were recited orally at Plaintiff's plea hearing, rather than contained in a written plea agreement, and Plaintiff agreed to the terms orally at his plea hearing. ECF Dkt. #224 at 4-7.

15. Plaintiff understood the terms of his plea agreement to be: (1) he would not have a felony on his record; (2) he would be subject to non-reporting probation for six months; (3) his record would be expunged after one year; and (4) he would not sue the police department. ECF Dkt. #217 at 47.

16. At his January 16, 2007 plea hearing, Plaintiff, upon questioning by Judge Cosgrove, answered: (1) in the affirmative when asked whether he wanted to enter a plea of no contest; (2) in the affirmative when asked whether he was entering the plea of his own free will; (3) in the negative when asked whether he had been promised anything in addition to the terms dictated on the record, forced to enter the plea, or coerced to enter the plea; (4) in the affirmative when asked whether he understood that he was giving up his right to a trial before a jury and all of his rights associated with a jury trial; (5) in the affirmative when asked whether he understood that the State of Ohio would have to prove his guilt to a jury beyond a reasonable doubt; (6) in the affirmative when asked whether he understood the possible penalty for the offense to which he was pleading; (7) in the affirmative when asked whether he was satisfied with the legal representation that he received from Attorney Rizzi, Attorney Congeni, and a third attorney who represented Plaintiff, Attorney Bowler; (8) in the affirmative when asked whether he understood that in consideration for offering a plea to the charged

>    misdemeanor and not the felony charge, he agreed not to institute any lawsuit against any of the police officers involved in the arrest or the City of Akron; (9) in the negative when he was again asked whether he was forced, coerced, or promised anything in addition to the dictated terms to enter the plea; and (10) in the affirmative when he was asked for a second time whether the plea was made of his own volition and free will.  ECF Dkt. #224 at 4-7.

17. Following the plea colloquy performed by Judge Cosgrove, which was in line with her customary practice regarding plea agreements, and with Attorney Rizzi present, Plaintiff entered a plea of no contest to the sole count of Resisting Arrest, and the court accepted the plea.  ECF Dkt. #215 at 20; ECF Dkt. #224 at 7-8.

18. Plaintiff was not in custody at the time of his January 16, 2007 plea hearing.  ECF Dkt. #215 at 68-69.

19. Based on her observations at the plea hearing, Judge Cosgrove did not sense that the State was attempting to cover up misconduct by a police officer and did not observe any indication of hesitation, vacillation, or wavering on Plaintiff's behalf when agreeing to the Release-Dismissal Agreement. ECF Dkt. #215 at 12-17.

20. The felonious Assault charge that the trial court dismissed following Plaintiff's plea carried a penalty of up to eighteen months in prison and a fine of either $2,500.00 or $5,000.00.[3]  ECF Dkt. #215 at 56.

---

[3] In testimony given before the Court on July 18, 2016, Prosecutor Johnson indicated that she believed the fine for the Assault charge was either $2,500.00 or $5,000.00 at the time Plaintiff entered his plea in his criminal case, but could not remember which figure was accurate.

21. Plaintiff was born on October 7, 1983, and was therefore twenty-two years old at the time of his arrest on May 28, 2006 and twenty-three years old at the time of his plea on January 16, 2007.  ECF Dkt. #217 at 14.

22. At the time of his arrest and plea, Plaintiff had graduated from high school, attended Ohio University for two years before discontinuing attendance due to his poor grades, and had subsequently attended the University of Akron for one semester before quitting school due to failing grades.  ECF Dkt. #217 at 17-19. While in high school, Plaintiff was on the honor roll his senior year and played three sports.  *Id.* at 16.  Plaintiff played football during his time at Ohio University.  *Id.* at 18.

23. In 2005, following his time at Ohio University and during his time at the University of Akron, Plaintiff worked part-time in the food service industry at McDonald's for four to five months before beginning a job in the landscaping industry after he had stopped attending college, which lasted for approximately six months before Plaintiff moved to Florida.  ECF Dkt. #217 at 19, 42.

24. In December 2006, Plaintiff moved to Florida with the aspiration to open his own landscaping business.  ECF Dkt. #217 at 19-20.  Once in Florida, Plaintiff began living with his brother and paying $150.00 from each paycheck towards rent.  *Id.* at 46.  During his first month in Florida, Plaintiff stocked shelves at Wal-Mart before being hired by a landscaping company, where he worked at the time of his arrest and plea.[4]  ECF Dkt. #217 at 44.

---

[4]At the time of his arrest in Ohio, Plaintiff's residence was in Florida.  ECF Dkt. #217 at 43-46.

-8-

25. During his time in Florida, prior to and at the time of his arrest and plea, Plaintiff managed his budget. ECF Dkt. #217 at 50. While living in Florida, Plaintiff entered into an agreement to open a credit card and learned how to manage his account. *Id.* at 50-51. While in college, Plaintiff had received student loans and understood that he would be required to repay the loans. *Id.* at 49.

26. Per Ohio law, the misdemeanor of Resisting Arrest to which Plaintiff pleaded no contest on January 16, 2007, was expunged from Plaintiff's record on July 24, 2008, after the one-year period prohibiting expungement had expired. ECF Dkt. #224 at 21. Plaintiff filed the instant civil suit on May 28, 2008, after a motion to seal his criminal record had been filed on January 22, 2008, but prior to the trial court sealing Plaintiff's criminal case. ECF Dkt. #1.

**B.** **Conclusions of Law**

1. The enforceability of the Release-Dismissal Agreement is determined by a three-part analysis examining whether: (1) Plaintiff voluntarily entered into the Release-Dismissal Agreement; (2) there was evidence of prosecutorial misconduct; and (3) whether enforcement of the Release-Dismissal Agreement furthers public interest. *Rumery*, 480 U.S. 386.

2. The voluntariness prong of the *Rumery* analysis takes into consideration: (1) the sophistication of the defendant; (2) whether the defendant was in custody when he entered into the agreement; (3) whether the defendant was represented by counsel; and (4) whether the defendant had ample time to consider the agreement. *Rumery*, 480 U.S. 386. In her concurrence, Justice O'Connor speaks to two additional items to consider, namely: (5) the nature of the criminal charge(s); and (6) whether the agreement was formed under judicial supervision. *Id.* at 401-402.

3. Defendants produced evidence establishing Plaintiff's literacy, educational background, and worldly experience sufficient to prove a level of sophistication such that Plaintiff was capable of entering into the Release-Dismissal Agreement. At the time of his plea, Plaintiff: was twenty-three years old; literate; had a high-school education; was accepted to at least two respected state colleges; participated in athletics at the high school and collegiate levels; understood his obligations to repay student loans; worked part-time and full-time jobs; moved from Ohio to Florida where he aspired to start his own landscaping business; paid rent; managed his budget; and applied for and used a credit card. Additionally, during the July 2016 bench trial, Plaintiff testified that he understood the nature of the Release-Dismissal Agreement.

4. Plaintiff was not in custody at the time he entered into the Release-Dismissal Agreement.

5. Plaintiff was represented by counsel when he entered into the Release-Dismissal Agreement.[5] At his January 16, 2007 plea hearing, one of Plaintiff's attorneys, Attorney Rizzi, was present. Although Attorney Rizzi was newly admitted to the

---

[5]The undersigned recognizes that Plaintiff has previously indicated that one or more of his attorneys advised him that the Release-Dismissal Agreement could be expunged and sealed along with the record of his misdemeanor. During the trial conducted on July 18, 2016 and July 19, 2016, Plaintiff did not present any evidence, beyond a simple affirmation that he had previously stated that his attorneys provided him with the incorrect advice described above, that his attorneys previously advised him that he could, in essence, agree not to sue the arresting officers and the City of Akron, reap the benefits of this agreement by having his felony charge dismissed, and then turn around and file suit against the arresting officers and the City of Akron once he had his misdemeanor expunged the following year. *See* ECF Dkt. #217 at 25-26. The flaws of this understanding of the Release-Dismissal Agreement should be apparent to any individual, let alone any attorney admitted to practice, who has ever entered into a basic agreement: once the first party has fulfilled their obligation, the second party must then uphold their end of the bargain. Here, the felony charge against Plaintiff was dismissed and it is unreasonable to believe that Plaintiff would not be required to then abide by his agreement not to bring a civil suit against the arresting officers or the City of Akron. Notably, in addition to choosing not to present any evidence as to this advice being offered by Plaintiff's trial attorneys, Plaintiff does not ask that the Court find that his attorneys provided him with this incorrect legal advice or that he relied upon it when agreeing to the terms of the Release-Dismissal Agreement. *See* ECF Dkt. #223.

        bar, Plaintiff indicated that he had discussions with Attorney Rizzi and Attorney Congeni the weekend before he appeared before Judge Cosgrove to enter his plea, and, specifically, that these discussions included the idea of a Release-Dismissal Agreement.  Plaintiff testified that based on discussions with Attorney Congeni and Attorney Rizzi, he understood the Release-Dismissal Agreement.  Further, before accepting the plea, Judge Cosgrove asked Plaintiff numerous questions regarding his understanding of his rights and Release-Dismissal Agreement, including a question directly asking Plaintiff whether he understood that he could not institute any lawsuit against any of the police officers involved in the arrest or the City of Akron per the terms of the Release-Dismissal Agreement.  Plaintiff repeatedly indicated that he understood the terms of the Release-Dismissal Agreement, answered in the affirmative when asked whether he understood that in exchange for the offering of a plea to the misdemeanor charge he could not institute any lawsuit against any of the police officers involved in his arrest or the City of Akron, and indicated that he was satisfied with the representation he received from Attorney Congeni, Attorney Rizzi, and Attorney Bowler when asked by the court.

6.     Plaintiff had ample time to consider the Release-Dismissal Agreement.  During the bench trial, Plaintiff testified that he did not want a felony conviction on his record and that he understood the significant repercussions associated with being designated as a felon.  Plaintiff testified that he discussed the idea of a Release-Dismissal Agreement with Attorney Congeni and Attorney Rizzi the weekend prior to his January 16, 2007 plea hearing.  January 16, 2007 fell on a Tuesday.  Accordingly, Plaintiff had two to three days to consider the relatively basic question of whether he would be willing to release his claims against the arresting police officers and the City of Akron in exchange for the significant benefit of not risking being designated a felon if convicted on the Assault charge.

7. As far as the nature of the criminal charge, the Assault charge carried a maximum sentence of eighteen months and a fine of $2,500.00 or $5,000.00.[6] The potential sentence that Plaintiff was facing was relatively minor as far as a felony is concerned, and, accordingly, Plaintiff was not coerced into agreeing to the terms of the Release-Dismissal Agreement by the possibility of a lengthy sentence.

8. The Release-Dismissal Agreement was executed under a sufficient degree of judicial supervision, and thus the Release-Dismissal Agreement should be viewed as the equivalent of a written agreement since judicial supervision provides due process protection against prosecutorial overreaching and insures voluntariness under all but the most unusual circumstances. *Burke v. Johnson*, 167 F.3d 276, 284 (6th Cir. 1999). Judge Cosgrove asked Plaintiff numerous questions regarding his understanding of the plea agreement and acceptance of the waiver of some of his rights associated with pleading guilty, and Plaintiff repeatedly indicated that he understood all aspects of the Release-Dismissal Agreement and the rights he was waiving. Judge Cosgrove did not observe body language or other behavior indicating that Plaintiff was unsure of whether he wished to enter into the Release-Dismissal Agreement. Further, Judge Cosgrove explicitly addressed the portion of the Release-Dismissal Agreement relating to the release of liability of all claims against the arresting police officers and the City of Akron arising from Plaintiff's arrest, and Plaintiff affirmed that he understood the release.

---

[6]*See* n. 1, *supra.*

-12-

9. Plaintiff voluntarily entered into the Release-Dismissal Agreement. The factors addressed in *Rumery* support a conclusion that Plaintiff understood the terms of the Release-Dismiss Agreement (which Plaintiff confirmed in his testimony), weighed the decision of whether to accept the Release-Dismissal Agreement, and reasonably chose to waive his potential civil claims against the arresting officers and the City of Akron in exchange for certainty that he would not be subject to the significant burden of being designated a felon.

10. The Court finds, as a matter of law, a lack of existence of prosecutorial misconduct. Prosecutor Johnson did not seek or secure the Release-Dismissal Agreement in a manner that demonstrates that she used the coercive power of criminal process to suppress complaints of police abuse. Rather, the evidence demonstrates that Plaintiff was facing a relatively minor felony charge, understood the repercussions of being convicted of a felony, was concerned about his future if convicted, and made a reasonable decision to enter into the Release-Dismissal Agreement. Further, the Release-Dismissal Agreement was entered into by the parties before Judge Cosgrove, who gave a sufficient plea colloquy before accepting Plaintiff's plea. This case does not present particularly unusual circumstances, and thus the degree of judicial supervision over Plaintiff's plea serves as additional, significant evidence that no prosecutorial misconduct took place during Plaintiff's criminal trial. *See Burke*, 167 F.3d at 284.

11. The Court finds, as a matter of law, that the enforcement of the Release-Dismissal Agreement will not have an adverse affect on relevant public interests. All parties

involved in the Release-Dismissal Agreement received a significant benefit. Defendants were released from defending against a civil suit and potentially being required to satisfy damage claims, and Plaintiff no longer had to defend against a felony charge that may have resulted in a significant burden being imposed upon him. Plaintiff reasonably chose to forgo the potential of compensation for non-permanent injuries resulting from his arrest in exchange for a guarantee that he would not be convicted of a felony.

### III. CONCLUSION

Plaintiff voluntarily entered into the Release-Dismissal Agreement. The Release-Dismissal Agreement was not the result of prosecutorial misconduct and is not contrary to public interest. Accordingly, this Court finds that the Release-Dismissal Agreement is enforceable.

Date: August 15, 2016    */s/George J. Limbert*
　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE